Jesús **DÁVILA–FERMÍN** and Cristina **Dávila, and the Conjugal Partnership Constituted Between Them, Plaintiffs,**

v.

**SOUTHEAST BANK, N.A., Defendant.**

**Civ. No. 88–1962CCC.**

United States District Court, D. Puerto Rico.

May 22, 1990.

Luis R. Mellado–González, Hato Rey, P.R., for plaintiffs.

Ricardo F. Casellas, Fiddler, González & Rodríguez, San Juan, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

This is a diversity action sounding in tort and breach of contract brought by plaintiffs, Jesús Dávila–Fermín, Cristina Dávila, and the conjugal partnership constituted between them, against defendant Southeast Bank, N.A. The matter is now before us on the report and recommendation of the U.S. Magistrate (docket entry 10) and the objections and reply to objections filed thereto.

The facts of this case are as follows. On 1982, while plaintiff Jesús Dávila–Fermín was working for VIASA (a Venezuelan airline) in Miami, Florida, he applied for and later was issued Mastercard and Visa credit cards by defendant. On April of 1983, Mr. Dávila–Fermín was transferred from his employment in Miami to Frankfurt, West Germany, where he allegedly ceased use of the cards but kept making periodic payments to his account. On or about July 1985, defendant revoked Mr. Dávila–Fermín's Mastercard credit privileges for the alleged non-payment of outstanding debts; and one month later his Visa credit privileges were revoked as well. Mr. Dávila–Fermín then informed defendant not owing the alleged outstanding sum, and requested an investigation so that the situation could be corrected. It is alleged, however, that defendant failed to correct its records, as solicited by plaintiffs, and that it further furnished information regarding the non-payment of the alleged overdue accounts to credit reporting agencies in Florida. As a result, Mr. Dávila–Fermín was denied credit privileges which he later requested from other creditors, among them Citicorp's Diner Club, Citibank's Preferred Visa and Spiegel's Preferred Charge. Plaintiffs then brought this suit against defendant alleging that its failure to correct the records constituted a breach of contract for non-compliance with their credit-card agreement, and that the alleged

false information it provided credit bureaus regarding Mr. Dávila–Fermín's non-payment of overdue accounts constituted a tortious act. Defendant then moved to dismiss the action on the ground that this Court lacked personal jurisdiction over it.

In his report, the U.S. Magistrate concluded that this Court lacked personal jurisdiction over the defendant. After examining the complaint and plaintiffs' opposition to defendant's motion to dismiss, he determined that plaintiffs had failed to prove the facts necessary to sustain this Court's exercise of personal jurisdiction over Southeast Bank. Plaintiffs, however, now claim in their objection to the report and recommendation that both the well-pleaded facts of the complaint and the evidence submitted in support of their opposition to defendant's motion to dismiss established a *prima facie* case showing *in personam* jurisdiction over defendant. We now review the matter *de novo*. Local Rule 510.2, District of Puerto Rico.

■ At the outset, it must be recognized that our inquiry into jurisdiction in the case at bar is two-fold. *Com. of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 667 (1st Cir.1980). First, this being a diversity case, a determination must be made over whether the assertion of jurisdiction is authorized by the Commonwealth's long-arm statute. *Mangual v. General Battery Corp.*, 710 F.2d 15, 18 (1st Cir.1983), *Ind. Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548, 558 n. 5 (1983). If authorized, such exercise of personal jurisdiction must be found to be consistent with the due process requirement of the United States Constitution. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

Puerto Rico's long-arm statute, Rule 4.7 of the Puerto Rico Rules of Civil Procedure, 32 L.P.R.A.App. III, provides in pertinent part:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) Participated in tortious acts within Puerto Rico personally or through his agent ...

. . . . .

■ With regard to whether jurisdiction can be statutorily asserted under the rule's first subsection, we note that the facts here stated are insufficient to meet its criteria. Defendant has submitted an affidavit by one of its officers, which remains unopposed in all its essential allegations and thus must be taken as true, *Mangual v. General Battery Corp.*, 710 F.2d at 19, which it claims shows that it has not "transacted business in Puerto Rico" within the meaning of Rule 4.7(a)(1). In the affidavit, it is stated that Southeast Bank has no branch offices, employees, mailing address or telephone numbers within the Commonwealth, does not advertise in Puerto Rico to solicit any business, pays no local taxes and owns no property locally. It is further stated that Southeast Bank has never extended credit to Mr. Dávila–Fermín in Puerto Rico. Similarly, defendant has also presented a negative certificate from the Commonwealth Department of State which shows that it is not incorporated nor authorized to do business in Puerto Rico. Were these the only facts before us, a manifest lack of personal jurisdiction over defendant would be evident. We note, nonetheless, that in interrogatories served by plaintiffs defendant admitted the fact that it has a corresponding banking relationship with two local banks, certainly a "business transaction" that under local case law would be considered sufficient enough to satisfy the requisite of Rule 4.7(a)(1). *See A.H. Thomas Co. v. Superior Court*, 98 P.R.R. 864 (1970). However, as no showing was made by plaintiffs that their tort and breach of contract causes of action were even remotely related to this business transaction, and being the showing of a causal nexus between the defendant's transaction in Puerto Rico and the claim a mandatory requirement under the rule, Rule 4.7 of the Puerto Rico Rules of Civil Procedure, *Mangual v. General Battery Corp.*, 710 F.2d at 19,

*Colón v. Gulf Trading Corp.*, 609 F.Supp. 1469, 1476 (D.P.R.1985), *A.H. Thomas Co. v. Superior Court*, 98 P.R.R. at 870, we are forced to conclude that jurisdiction cannot be asserted in this case under the provisions of Rule 4.7(a)(1).

There remains to be determined whether the assertion of jurisdiction is possible under Rule 4.7(a)(2). Plaintiffs, confident that this is the case, have stated that although the acts which constituted the alleged tortious action originated in Florida, insofar as its damaging effects were felt by them while residing in Puerto Rico, it must be considered that the tortious acts were committed *within* Puerto Rico as required by the Rule. Defendant, however, has rejected this interpretation, claiming instead that as all the operative facts which gave rise to the alleged tort occurred in Florida, under the Rule's plain language no tortious act was committed within Puerto Rico to support the exercise of personal jurisdiction under its provisions. The issue then is one of statutory construction: whether the phrase "participated in tortious acts within Puerto Rico" should be interpreted as including the commission of tortious acts outside Puerto Rico when their effects are felt within the Commonwealth.

■ As we have previously recognized, to interpret the Puerto Rican rule we "must look at its language, history and at its construction by the Supreme Court of Puerto Rico". *Colón v. Gulf Trading Co.*, 609 F.Supp. at 1477. This Court has previously acknowledged, however, that the issue now before us has never been decided by the Supreme Court of Puerto Rico. *Rubí v. Sladewski*, 641 F.Supp. 536, 538 (D.P.R.1986). Nonetheless, we have indicated that the legislative history of the rule suggests a liberal interpretation of the terms contained in its express language. *Colón v. Gulf Trading Corp., supra.* The Commonwealth's Supreme Court has also subscribed a liberal interpretation of the only section of the rule it had construed, section (a)(1). *Cf. A.H. Thomas v. Superior Court, supra*, (term "business transaction within Puerto Rico" held to include the mere act of sending mail to Puerto Rico from another jurisdiction), *Medina v. Tribunal Superior*, 104 D.P.R. 346, 356 (1975) (term "business transaction" broadly defined). Moreover, the Court of Appeals has suggested reading the rule as conferring jurisdiction over a non-resident who commits a tort outside of Puerto Rico which causes injury within the Commonwealth, *Mangual v. General Battery Corp.*, 710 F.2d at 19, although it has recognized that its interpretation is a matter for the Commonwealth courts. *Escudé-Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 908, n. 3 (1st Cir.1980). Fortunately, this dilemma need only tease academic interests for the moment, as we find that there is no need for us to decide whether plaintiffs have succeeded in establishing a *prima facie* case authorizing personal jurisdiction over Southeast Bank under section (a)(2) of Puerto Rico's long-arm statute. Even if we were to consider that the effects that defendant's alleged tortious act produced in Puerto Rico were enough to satisfy the "participation in tortious acts within Puerto Rico" requirement of Rule 4.7(a)(2), the assertion of personal jurisdiction over defendant would offend due process. *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir.1990), *Eveland v. Director of C.I.A.*, 843 F.2d 46, 50 (1st Cir.1988).

■■ As it is generally known, the Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties or relations. *International Shoe Co. v. Washington*, 326 U.S. at 319, 66 S.Ct. at 160; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985). The constitutional touchstone is whether the defendant has purposefully established "minimum contacts" in the forum State. *International Shoe Co. v. Washington*, 326 U.S. at 316, 66 S.Ct. at 158. The Court has warned, however, that this test is not susceptible of mechanical interpretation, *Kulko v. Superior Court of California*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978), and through the years differing degrees of

contacts has been found to meet the constitutional minimum. In fact, it has been held that even a single act can support jurisdiction, so long as it creates a substantial connection within the forum. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

On this constitutional issue, plaintiffs' claim is identical to the one previously raised when trying to establish jurisdiction under the local long-arm statute. They aver that even though defendant's alleged tortious act took place in Florida, the effects it produced in Puerto Rico were a sufficient minimum contact with the forum to permit the assertion of jurisdiction under due process standards. Defendant, on the other hand, limits itself to contend that, in view of the prevalent doctrine, such a tenuous contact cannot constitutionally support the exercise of personal jurisdiction by this Court over it.

We note, however, that the Supreme Court had previously addressed this same allegation of whether the in-state effects of an out-of-state conduct are enough to satisfy the constitutional standard, and we find that its decision in that regard is particularly controlling here. In the case of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984),[1] the Court expressly held that unlawful activity initiated outside the forum and affecting a plaintiff inside the forum can support the assertion of personal jurisdiction. In *Calder*, two Florida reporters of the *National Enquirer* were sued in California for a story they had written and edited about Californian Shirley Jones. Although the reporters had no contacts with California related to the cause of action except for the effects that the publication of their article had in that State, the Supreme Court held that jurisdiction was warranted. In reaching that conclusion, the Court explained:

[P]etitioners (the reporters) are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating effect upon respondent (Jones). And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must reasonably anticipate being haled into court there to answer for the truth of the statements made in their article.

*Calder v. Jones*, 465 U.S. at 789–90, 104 S.Ct. at 1487 (citations omitted).

■ It must be realized that the Court, in upholding jurisdiction, emphasized that the foreseeability by a defendant of litigation in the forum is an important factor in satisfying the due process requirement. Such foreseeability was found in *Calder* as it was proved to the Court that defendant knew that the effects of their action were going to be felt specifically in California. But it is precisely that same type of purposeful action directed at the forum State what we found missing in the present case. Having reviewed all the evidence submitted by plaintiffs, we have reached the conclusion that there is no evidence whatsoever in the record that defendant knew, at the time of the commission of its alleged tortious acts in Florida, that plaintiffs were already residents of Puerto Rico, or that the "brunt of their injury" was going to be felt by them at the Island. *Hugel v. McNell*, 886 F.2d 1, 4 (1st Cir.1989). It is true that statements in that regard were made by plaintiffs in their briefs, but mere arguments and allegations of jurisdiction are not enough when jurisdiction has been challenged. *Johnson Creative Arts v. Wool Masters*, 743 F.2d 947 (1st Cir.1984). Plaintiffs had the burden to prove this fact, which under *Calder* was necessary to sustain jurisdiction, and failed. *See The American Freedom Train Foundation v. Spurney*, 747 F.2d 1069, 1075 (1st Cir. 1984). Even if we were to consider the allegations of the complaint, it would not

---

1. Inexplicably, this case was never cited by the parties on the five briefs submitted by them before the Court while litigating this personal jurisdiction issue.

**50**

help plaintiffs either, as it appears that defendant was there charged with mere untargeted negligence,[2] the kind of conduct that the court suggested in *Calder* as not being sufficient to confer jurisdiction over a non-resident defendant.

Moreover, we further note that in defining when is it that a potential defendant should reasonably anticipate out-of-state litigation, the Supreme Court has repeatedly made clear that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *Burger King v. Rudzewicz*, 471 U.S. at 474, 105 S.Ct. at 2183; *Asahi Metal Ind. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 107 S.Ct. 1026, 1031, 94 L.Ed.2d 92 (1987). Insofar as in this case the alleged tortious conduct committed by defendant in Florida produced its effects in Puerto Rico only because of plaintiffs unilateral decision of seeking credit while being residents of that forum, it cannot be concluded that defendant, in the absence of other meaningful contacts, had a "conduct and connection with the forum State ... such that (it) should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). No "purposeful availment" on the part of defendant having being proved, it would offend due process to assert jurisdiction over it solely as a result of its "random, fortuitous or attenuated" contacts with our forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984).

Accordingly, and for the reasons stated above, we now conclude that the Court lacks *in personam* jurisdiction over defendant Southeast Bank, N.A. Consequently, its *motion* to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure is

2. In paragraph 9 of the complaint, it is stated: Defendant bank failed to correct its records in a *negligent* breach of the contractual terms agreed with plaintiff. Defendant not only failed to answer plaintiff's counsel's letters to those effects, but publicly listed plaintiff as a

hereby GRANTED. Judgment shall be entered accordingly.

SO ORDERED.

person with default record on payment of debts and further informed credit bureau systems *all over the country* damaging and destroying plaintiff's good credit and reputation. (emphasis ours).